<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUSAN ZABRANSKY, on behalf of herself and all others similarly situated<br><br>  Plaintiff,<br><br>  v.<br><br>SAMSUNG ELECTRONICS AMERICA. INC. and SAMSUNG ELECTRONICS CO., LTD.,<br><br>  Defendants. | No. 24cv2133 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

  Plaintiff Susan Zabransky brings this putative class action against Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd.[1] (collectively, "Samsung") in connection with Samsung's allegedly defective design and/or manufacture of several of its top-loader washing machines. D.E. 1 ("Complaint" or "Compl.").

  Samsung moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). D.Es. 19, 21[2] ("Motion" or "Mot."). Plaintiff opposes. D.E. 27 ("Opposition" or "Opp'n"). Samsung replies. D.E. 30 ("Reply"). The Court has reviewed the parties' submissions and decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **GRANT in part** and **DENY in part** Samsung's Motion.

---

[1] Samsung notes that Plaintiff failed to serve Samsung Electronics Co., Ltd. (Samsung's South Korea-based parent company), and therefore, it is not a party to this action.
[2] Samsung filed a revised brief, D.E. 21, which, for simplicity, the Court refers to as Samsung's Motion throughout this opinion.

I.      **BACKGROUND**[3]

A.      **The Flange Defect**

According to the Complaint, six Samsung-manufactured washing machine models[4] contain a defect that causes the flange[5] on the bottom of the tub of the washing machines to prematurely corrode.  Compl. ¶ 2.  The corroding flange releases tiny particles into the washing machine during wash cycles, which leads to these particles attaching to clothing.  *Id.*  The particles also clog hoses in the washing machine, which prevents water from properly draining, and sometimes traps water in the impeller, causing the washer to stop draining.  *Id.*  The defect causes mold and other debris to build up on the corroded flange, which releases into the machine and ultimately onto clothing. *Id.*  Plaintiff refers to this as the "Flange Defect."  *Id.*

Plaintiff alleges the Flange Defect arises sometimes less than one year after purchase.  *Id.* Samsung allegedly responded to complaints from customers online for at least three years regarding this defect, and other online complaints show customers contacted Samsung about the Flange Defect in late 2013.  *Id.* ¶ 58.  Samsung, therefore, has known about this issue as far back as late 2013.  *Id.*

Plaintiff includes multiple screenshots of online complaints from customers, both from third-party sites and Samsung's site, to show others experienced the Flange Defect.  *Id.*  ¶¶ 56-57, 66.  For example, in a review from November 2012, a customer wrote that "the metal mount that

---

[3] The facts in this section derive from the Complaint's well-pled factual allegations and the attachments thereto, which the Court presumes to be true for purposes of resolving this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[4] The six models are:  WA52M7750AV/A4 (Plaintiff's model), WA55CG7100/AWUS, WA50R5200AV/A4, WA55A7300AE/US, WA47CG3500AV/A4, WA45T3200AW/A4.  Compl ¶¶ 11, 19.
[5] "The flange is connected to both the motor and the drum and is necessary for the drum to spin." Opp'n at 6.

couples the motor to the tub has deteriorated, broken down and came apart." *Id.* ¶ 56. Another reviewer wrote that "there's a consistency of small, grey, disgusting particles that cling to our close [sic] . . . . Our clothes are always full of these clay like particles." *Id.*

**B.    Plaintiff's Background**

On February 15, 2019, Plaintiff purchased a Samsung top-load washing machine from Lowe's Home Improvement in Butler, New Jersey. *Id.* ¶¶ 19, 21. Plaintiff's washing machine came with a warranty. *Id.* ¶ 93; D.E. 19-3 ("Warranty"). Samsung expressly warranted against defects "in materials or workmanship encountered in normal household, noncommercial use." Compl. ¶ 93 (citing Warranty). The warranty periods are: one year from date of purchase for any "parts and labor;" three years for the stainless tub part (Part Only); and ten years for the "washing DD motor part" (Part Only). Warranty at 67. Plaintiff states there is a lifetime warranty for the "Stainless Steal [sic] Drum," Compl. ¶ 93, but the Court cannot locate any lifetime warranty. *See* Warranty at 67; Reply at 3 ("Plaintiff has created this supposed lifetime warranty out of whole cloth, as the warranty materials that came with Plaintiff's washer contain no such 'lifetime warranty'"). The Warranty provided that, "[d]uring the applicable warranty period, a product will be repaired, replaced, or the purchase price refunded, at the sole option of Samsung." Warranty at 67.

In November 2023, Plaintiff began noticing "aluminum or metallic particles" in her machine and on clothing she took out of the machine. *Id.* ¶ 23. Plaintiff alleges that she immediately contacted Samsung to report this problem, but was given "the proverbial run-around." *Id.* Samsung's representatives instructed Plaintiff to clean the machine with bleach on the self-clean cycle. *Id.* ¶ 24. After three cleanings failed to fix the problem, Plaintiff requested that Samsung send "a repair person" to fix her machine. *Id.* A Samsung representative informed Plaintiff she would be required to pay $95.00 for someone to come and diagnose the issue with

her machine. *Id.* ¶ 26.  Plaintiff demanded the repair be covered under warranty "due to a defective aluminum flange underneath the agitator that is crumbling [and] Samsung is aware of the problem." *Id.* ¶¶ 25-27.  To date, Plaintiff refuses to pay $95.00 for the technician to diagnose the problem, and Plaintiff's machine has not been repaired. *See id.* ¶ 29.

In fact, Plaintiff alleges her machine has further deteriorated. *Id.* ¶ 30.  Specifically, "debris from the deteriorating flange caused Plaintiff's washing machine to stop and issue a '5c' code, indicating the washing machine stopped draining water." *Id.*  Plaintiff alleges that a huge chunk of debris is stuck in the impeller, and that debris from the flange has clogged hoses in the machine, preventing water from draining properly. *Id.*  As a result of the Flange Defect and Samsung's failure to remedy this known defect, Plaintiff has suffered damages, including repair and replacement costs, time spent arranging and obtaining repairs, and inconvenience. *Id.* ¶ 32.

### C.    The Proposed Class

Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff seeks to bring claims on behalf of all consumers in the United States (or alternatively, in New Jersey), who, on or after March 8, 2018, bought a new Samsung washer of one of the six aforementioned models and "experienced a deteriorated flange or a flange that is susceptible to becoming deteriorated due to the Flange Defect." *Id.* ¶¶ 74-75.

Samsung allegedly failed to adequately design, manufacture, and/or test the defective washing machines to ensure that they were free from the Flange Defect, and/or knew, had reason to know, or was reckless in not knowing of the Flange Defect when Samsung uniformly warranted, advertised, marketed and sold the washing machines. *Id.* ¶ 59.  According to Plaintiff, Samsung "uniformly concealed the Flange Defect from Plaintiff and all consumers of Samsung Washing Machines and failed to remove" the defective machines from the marketplace or take adequate remedial action. *Id.* ¶ 8.  Samsung instead chose to sell defective machines even though it "knew,"

4

"was reckless in not knowing" about, or "actively concealed" the Flange Defect that caused the six referenced models to prematurely deteriorate. *Id.* And Samsung allegedly knew that customers would not discover the Flange Defect until after the expiration of the warranty. *Id.* ¶ 102.

Plaintiff alleges that Samsung not only failed to disclose the Flange Defect, but that it also "falsely represented" that the defective machines "have technology which helps extend clothing life by treating fabrics gently. Small water holes help prevent fabrics from snagging and being damaged, allowing fabric care with deep-clean results." *Id.* ¶¶ 60-61. Samsung also marketed that its "'self-clean' feature [] keeps your washer tub fresh and clean by using combination of soaking, pulsating and high speed spinning to remove dirt and bacteria." *Id.* According to Plaintiff, Samsung affirmatively mislead her and class members by declining to provide warranty repairs for the Flange Defect. *Id.* ¶ 10.

As a result of Samsung's concealment of the Flange Defect as well as the misrepresentations in advertisements, Plaintiff and the Class Members were induced to purchased washing machines. *Id.* ¶ 9. Plaintiff alleges she chose to purchase her machine because of the advertised self-clean feature and Samsung's other advertisements that the machine could accommodate larger loads that would save Plaintiff time. *Id.* ¶¶ 20-21. According to Plaintiff, neither she nor the Class could not have reasonably discovered the Flange Defect before buying their washing machines, and had Samsung disclosed the Flange Defect, Plaintiff, the Class, or the Subclass Members would either have not purchased the machines or paid a lower price for them. *Id.* ¶¶ 13-14. The washing machines at issue failed to meet Plaintiff's legitimate and reasonable expectations. *Id.* ¶¶ 47-51.

Plaintiff brought this action on March 8, 2024. *See id.* at 49. Plaintiff asserts seven causes of action:

1. Breach of express warranty (Count I);
2. Breach of the implied warranties of merchantability and fitness for a particular purpose (Count II);
3. Injunctive and equitable relief (Count III);
4. Common-law fraud (Count IV);
5. Violations of New Jersey's Consumer Fraud Act (Count V);
6. Violations of the Truth-in-Consumer Contract, Warranty and Notice Act  (Count VI); and
7. Unjust enrichment (Count VII).

Compl.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

"A district court has to first determine . . . whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Penn. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. But "[a] factual attack is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.*  In a factual attack, "the District Court may look beyond the pleadings to ascertain the facts." *Id.*  "In sum, a facial attack 'contests the sufficiency of the pleadings,'" *id.* (quoting *In re Schering Plough Corp.*, 678 F.3d at 243), "'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

Here, Samsung argues that Plaintiff lacks Article III standing to assert claims for the washing machines she did not purchase. Accordingly, this is a facial attack. When analyzing whether a complaint adequately pleads the elements of standing, "courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: 'Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.'" *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007)).

## B. Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (cleaned up). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the Samsung is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Ashcroft*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

"Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Simner v. LG Elecs. U.S.A., Inc.*, No. 21-13322, 2022 WL 3152707, at *3 (D.N.J. Aug. 8, 2022) (quoting Fed. R. Civ. P. 9(b)). A plaintiff "alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the Samsung on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.*, No. 09-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (alteration in original) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

## III.    ANALYSIS

### A.    Standing

Samsung contends that Plaintiff lacks Article III standing to bring claims for any washing machine model besides her own. Mot. at 36. Plaintiff asks the Court to defer the standing inquiry until the class certification stage. Opp'n at 39. As the standing inquiry is premature, the Court will defer its ruling until Plaintiff seeks class certification.

To establish standing, a plaintiff must allege that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the Samsung, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing these elements. *Id.*

Typically, a "plaintiff has standing only for claims related to products [s]he purchased or used." *David v. Volkswagen Grp. of Am., Inc.*, No. 17-11301, 2018 WL 1960447, at *3 (D.N.J. Apr. 26, 2018). But the timing of a standing analysis sometimes differs in the context of a class action. *Simner v. LG Elecs. U.S.A., Inc.*, No. 21-13322, 2022 WL 3152707, at *4 (D.N.J. Aug. 8,

2022) (citations omitted).  Courts in this district are divided on whether plaintiffs have standing to bring claims for products that they did not purchase.  "[S]ome courts have dismissed the remaining claims concerning the rest of the product line, holding that named plaintiffs lack standing for claims relating to products they did not purchase, while other courts "have refused to dismiss claims for products that the named plaintiffs did not buy themselves."  *Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 WL 5771400, at *15 (D.N.J. Sept. 30, 2015) (collecting cases).

Courts rejecting Samsung's argument have followed the test established in *Haas v. Pittsburgh Nat'l Bank*, which asks whether: (1) the basis for the claims are the same, (2) whether the products are closely related, and (3) whether the defendants are the same.  526 F.2d 1083, 1088-89 (3d Cir. 1975).  This Court has previously reasoned that "the *Haas* test comports with the broader goals of representative litigation and is sufficient to satisfy the minimum threshold requirement of standing."  *Burbank v. BMW of N. Am., LLC*, No. 21-1711, 2022 WL 833608, at *3 (D.N.J. Mar. 21, 2022).

The Court agrees with Plaintiff that she has met each element of the *Haas* test.  *First*, the basis of the claims for all washing machines is generally the same:  there is an alleged common defect with the aluminum spider arm shaft flange corroding, which can be seen through Plaintiff's allegations in conjunction with several complaints that Samsung customers left online.  Opp'n at 38 (citing Compl. ¶¶ 2-10, 37-67).  *Second*, the six washing machine models are closely related because they are all "top load washing machines made with an aluminum spider arm shaft flange" that share the Flange Defect.  *Id.* at 38-39 (citing Compl. ¶¶ 2, 11, 40-46).  *Third*, the defendants are the same because Samsung is the only manufacturer of the six washing machine models.  *Id.* at 39 (citing Compl. ¶ 11).  Because Plaintiff satisfies all three elements of the *Haas* test, the Court will defer the standing inquiry until the class certification stage.  *Wesley v. Samsung Elecs. Am.,*

*Inc.*, No. 20-18629, 2024 WL 3272263, at *5 (D.N.J. June 30, 2024); *Burbank*, 2022 WL 833608, at *3.

### B.    Plaintiff Fails To Allege Common Law Fraud (Count IV)

To state a claim for common law fraud under New Jersey Law, a plaintiff must allege "(1) a material misrepresentation or omission of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity or knowing the omission to be material; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *GKE Enterprises, LLC v. Ford Motor Credit Co. LLC USA*, No. 09-4656, 2010 WL 2179094, at *4 (D.N.J. May 26, 2010). In the case of omissions, a plaintiff must also show a duty to disclose. *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 184 (D.N.J. 2013).

Federal Rule of Civil Procedure Rule 9(b) sets forth a heightened pleading standard for allegations of fraud, which applies to claims brought at common law.[6] *Frederico*, 507 F.3d at 200. "Under that standard, a plaintiff must 'state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'" *Alban v. BMW of N. Am.*, No. 09-5398, 2011 WL 900114, at *10 (D.N.J. Mar. 15, 2011) (quoting *id.*). A plaintiff must plead facts that would be "the first paragraph of any newspaper story," *i.e.*, "who, what, when, where and how" these allegations transpired. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997). However, Rule 9(b)'s "heightened standard is somewhat relaxed in a case based on a fraudulent omission," rather than one based on misrepresentation. *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2013 WL 5574626, at *15 (D.N.J. Oct. 9, 2013) (quoting *Montich v. Miele USA, Inc.,* 849 F. Supp. 2d 439,

---

[6] Rule 9(b)'s heightened pleading standard also applies to claims brought under the NJCFA. *Federico,* 507 F.3d at 200.

451 (D.N.J. 2012)). "This is because a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Id.* (internal quotation omitted). This is especially true where "the factual information is peculiarly within the defendant's knowledge or control." *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-21401, 2020 WL 6269277, at *7 (D.N.J. Oct. 26, 2020). Courts have relaxed Rule 9(b)'s heightened pleading standard when the plaintiff alleges that the defendant exclusively possesses information relevant to their claims. *See Kaplan v. Gen. Elec. Co.*, No. 22-5296, 2023 WL 4288157, at *8 (D.N.J. June 30, 2023). Plaintiff has made allegations as to misrepresentations and omissions. *See* Compl. ¶ 6. The Court will apply the relaxed standard only to her omission-based claims.

### 1.    Misrepresentations or Omissions

#### a.    Plaintiff does not state a misrepresentation

Plaintiff argues that "Samsung's detailed description of the positive attributes of the washer, including that it will remove dirt and bacteria, has deep cleaning action and will permit the consumer to wash fewer loads are deceptive misrepresentations because once the flange defect manifests all of these promises are rendered false." Opp'n at 22. Plaintiff alleges multiple misrepresentations by Samsung, including:

> Samsung's advertising of the washing machine's ability to accommodate larger loads which would ultimately save Plaintiff time. Indeed, Samsung advertised that "washer capacity has a direct impact on how much time you spend doing laundry. Larger tub size means fewer loads, and fewer loads mean more time doing other things you love." Compl. ¶ 20.

> Samsung falsely represented that the Washing Machines in fact have technology which "helps extend clothing life by treating fabrics gently. Small water holes help prevent fabrics from snagging and being damaged, allowing fabric care with deep-clean results." Moreover, Samsung boasts its "self-clean" feature with "keeps your washer tub fresh and clean by using combination of soaking, pulsating and high speed spinning to remove dirt and bacteria. *Id.* ¶ 61.

Samsung's representations that its Samsung Washing Machines would do a great job cleaning laundry, and specifically include technology that "helps extend clothing life by treating fabrics gently [and using] small water holes help prevent fabrics from snagging and being damaged, allowing fabric care with deep-clean results" were not true. *Id.* ¶ 64.

Samsung argues that even if these advertisements were relevant, they are not "actionable because Plaintiff does not plead any facts showing . . . that they 'had the capacity to mislead the average consumer.'" Mot. at 19 (quoting *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 501 (D.N.J. 2006)).[7] The Court agrees with Samsung. These advertisements, which do not mention the flange, are at best tangentially related to the Flange Defect. Given the tenuous connection, it is unclear to the Court how these advertisements could mislead a consumer regarding the Flange Defect or how Samsung allegedly used these advertisements to misrepresent a relevant attribute of its washing machines. Plaintiff attempts to rebut Samsung's argument by quoting advertisements that include statements about certain features of the machine and that those features did not work as marketed. Opp'n at 22-23 (quoting Compl. ¶ 20-22, 30-31). This does not, however, give rise to a misrepresentation because Plaintiff fails to show how Samsung's advertisements misled Plaintiff about a potential defect in the flange, which is the relevant inquiry here. Therefore, Plaintiff fails to allege an affirmative misrepresentation.

### b.    *Plaintiff does not state an omission*

"A plaintiff who asserts a fraud claim based on omission must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146, 2010 WL 2925913, at *5 (D.N.J. July 21,

---

[7] In a footnote, Plaintiff labels *Adamson* and other cases Samsung cites as "factually and legally inapposite," yet does little to distinguish these cases or cite contrary caselaw. Opp'n at 23 n.5. The Court therefore disagrees with Plaintiff's conclusory argument.

2010) (internal quotations omitted). Plaintiff avers that Samsung's failure to disclose that the washers have a defective flange is "the operative omission because it is the disintegration of the flange that renders Samsung's promises of a fresh washer tub, the absence of dirt and bacteria, deep clean results, gentle fabric treatment and the need to wash fewer loads false." Opp'n at 22 (citing Compl. ¶¶ 59-66).

Samsung argues that Plaintiff's omission claim fails, *inter alia*, because Plaintiff does not show Samsung was under a duty to disclose. *Id.* at 31. The Court agrees. To survive a motion to dismiss, Plaintiff must show that Samsung had a duty to disclose the omitted information. *Majdipour*, 2015 WL 1270958, at *8. In New Jersey, there are three instances where a duty to disclose arises: (1) fiduciary relationships; (2) "relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied;" and (3) "relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). Plaintiff alleges no facts that any of these three instances apply.

Instead, Plaintiff argues that Samsung had a duty to disclose the defect because New Jersey imposes a duty to disclose when a defendant makes a partial disclosure. Opp'n at 32-33 (citing *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017)). Plaintiff contends that Samsung's advertisements about its washing machines and certain features serve as the partial disclosure that required Samsung to disclose the Flange Defect. The Court is unpersuaded. These advertisements do not partially disclose any facts about the flange or the Flange Defect, nor are they of the same ilk as the examples Plaintiff directly quotes in her Opposition from *In re Volkswagen*. Therefore, Plaintiff fails to show Samsung was under any duty to disclose the defect, and in turn, she does not successfully allege an omission.

### 2.    *Knowledge of the Flange Defect*

Relatedly, even though a plaintiff pleading a fraudulent omission claim is not required to plead to the same level of precision as a misrepresentation claim, *see Feldman v. Mercedes-Benz USA, LLC*, No. 11-984, 2012 WL 6596830, at *10 (D.N.J. Dec.18, 2012), Plaintiff has failed to sufficiently plead that Samsung had knowledge of the Flange Defect such that any omission was knowing.  "Allegations of knowledge, even in a claim for fraud, are subject only to the Federal Rule 8(a) plausibility standard." *DeFrank*, 2020 WL 6269277, at *12 (D.N.J. Oct. 26, 2020).  Still, a "plaintiff asserting fraudulent omission claims in the defective product context must plead sufficient allegations to show, among other things, that the manufacturer knew of the alleged defect before sale and failed to disclose those material facts to consumers." *George v. Jaguar Land Rover N. Am. LLC*, No. 20-17561, 2021 WL 5195788, at *11 (D.N.J. Nov. 8, 2021).

To establish Samsung had pre-sale knowledge of the Flange Defect, Plaintiff relies on a variety of online complaints that both pre- and post-date her purchase.  Opp'n at 28-29 (citing Compl. ¶¶ 3, 8, 52-58).  Samsung raises a variety of issues with Plaintiff's allegations that further warrant dismissal of Plaintiff's fraud claim.

*First*, Plaintiff relies on several online complaints that post-date her purchase.  The Court gives these *post*-sale complaints no weight "as they logically could not provide *pre*-sale knowledge." *McMahon v. Volkswagen Aktiengesellschaft*, No. 22-1537, 2023 WL 4045156, at *12 (D.N.J. June 16, 2023) (emphasis added).

*Second*, even when considering the complaints that pre-date Plaintiff's purchase, Plaintiff fails to sufficiently plead facts that support a plausible inference that Samsung was aware of these complaints.  Plaintiff cites to several comments listed on a third-party website, *see* Compl. ¶ 56, but has "provided no indication that [Samsung] viewed or would have viewed those websites." *Oliver v. Funai Corp., Inc.*, No. 14-4532, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015).

14

Plaintiff similarly has not alleged facts indicating that Samsung monitored third-party website complaints. *McMahon*, 2023 WL 4045156, at *12; *see also George*, 2021 WL 5195788, at *11 (dismissing a fraud claim because the plaintiffs alleged that the defendant actively monitored complaints through a program, maintained its own online portal for reporting vehicle defects, worked closely with the NHTSA to monitor complaints, and monitored online forums). Plaintiff alleges nothing of that kind here, and therefore, has failed to state a common law fraud claim.[8]

Plaintiff's arguments in opposition are not persuasive. While it is true that this Court is more likely to allow a claim to survive a motion to dismiss when knowledge is solely in the hands of the defendant, *see also McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470, 2023 WL 6140641, at *5 (D.N.J. Sept. 20, 2023), Plaintiff does not allege enough to meet this threshold. Therefore, the Court will **DISMISS** *without prejudice* Count IV, Plaintiff's common law fraud claim.

### C.    Plaintiff Fails to State a NJCFA Claim (Count V)

In order to establish a NJCFA claim, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *McCalley v. Samsung Elecs. Am., Inc.,* No. 07-2141, 2008 WL 878402, at *7 (D.N.J. 2008) (cleaned up). Unlawful practices prohibited by the NJCFA fall into three categories: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations. *Id.* (internal citations omitted). "Unlike common law fraud, the NJCFA does not require [the plaintiff] to prove that he actually relied on [defendant's] misrepresentations or omissions." *Alban*, 2011 WL 900114, at *10 (citing N.J. Stat.

---

[8] More broadly, even had Plaintiff alleged more facts regarding these online complaints, those alone are insufficient to show pre-purchase knowledge. *Oliver*, 2015 WL 9304541, at *4 ("Plaintiffs have not directed this Court to any case law from the Third Circuit or elsewhere suggesting that a plaintiff can plead knowledge of a defect based upon anonymous internet postings.").

Ann. § 56:8-2). However, a plaintiff bringing an NJCFA claim on the basis of a material omission must "show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Schechter v. Hyundai Motor Am.*, No. 18-13634, 2019 WL 3416902, at *5 (D.N.J. July 29, 2019). Although Plaintiff alleges the latter two elements of her NJCFA claim, she does not adequately plead an unlawful practice by Samsung.

### 1. Ascertainable loss

"The CFA does not define what constitutes an 'ascertainable loss,' and there is no legislative history 'that sheds direct light on those words.'" *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005)). No special specificity with regard to pleading ascertainable loss is required. *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 503 (D.N.J. 2009). Ascertainable loss can mean "the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised," *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011), or even out-of-pocket loss, *see Thiedmann*, 183 N.J. at 248.

Plaintiff alleges ascertainable losses in the form of "repair costs associated with attempted repairs of the Washing Machines and replacement costs," Compl. ¶ 142, namely, a $100 service fee charged by Samsung if a service technician comes to a customer's house, and about $200 to purchase a new flange (not including labor), *id.* ¶¶ 4-5. Plaintiff also alleges that had she known about the Flange Defect, she would not have bought her washing machine, or would have paid a lower price. *Id.* ¶ 14.

Samsung first argues that these "conclusory" allegations specify no ascertainable loss. However, the ascertainable loss element is sufficiently pled when a plaintiff alleges that a product is worth less because of a defect, as such loss is quantifiable. *Kaplan*, 2023 WL 4288157, at *8. In other words, a plaintiff can sufficiently plead ascertainable loss when they allege they "got less

than what they expected." *Marcus v. BMW of N. Am.*, No. 08-5859, 2010 WL 4853308, at *11 (D.N.J. Nov. 19, 2010), *rev'd on other grounds, Marcus v. BMW of North Am.*, 687 F.3d 583 (3d Cir. 2012); *see also Morcom*, 2017 WL 8784836, at *14 (finding a plaintiff pled ascertainable loss because the washing machine he purchased took much longer to complete a single wash cycle than one would normally expect, and was thus worth less than the working washing machine he was promised).

Next, Samsung contends that Plaintiff cannot establish ascertainable loss because the product continued to perform beyond the warranty period. Mot. at 24 (citing at *Duffy v. Samsung Elecs. Am., Inc.*, No. 06-5259, 2007 WL 703197, at *8 (D.N.J. Mar. 2, 2007)). This proposition follows from *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (N.J. Super Ct. App. Div. 2006), another case Samsung cites to support its position. However, in reading *Perkins*, the plaintiff's "obligation to provide admissible evidence of a diminution in value had not arisen when the trial judge dismissed the complaint," as the case was only at the motion to dismiss stage. *Id.* And while the *Perkins* court noted that a claim that "a defect may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis for a claim under the CFA," 890 A.2d at 1004, Plaintiff also alleges that the Flange Defect sometimes arises within the first year of use of one of the six models alleged to contain the Defect. Compl. ¶ 2. The Court therefore finds that Plaintiff has established this element.

### 2.    *Causation*

Next, Samsung argues that Plaintiff cannot plead the element of causation. Mot. at 21. "A plaintiff must demonstrate that the loss suffered is attributable to defendant's unlawful conduct—in essence, was suffered 'as a result of' defendant's violation of the statute—to establish the necessary nexus between the alleged loss sustain[ed] and a defendant's offending behavior." *Parker v. Howmedica Osteonics Corp.*, No. 07-02400, 2008 WL 141628, at *3 (D.N.J. Jan. 14,

17

2008) (quoting *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 WL 1237825, at *4 (D.N.J. Apr. 26, 2007)). To survive a motion to dismiss, a plaintiff is only required to put forth "enough factual matter (taken as true) to suggest" the elements of the claim. *Maniscalco*, 627 F. Supp. 2d at 503 (D.N.J. 2009) (quoting *Phillips,* 515 F.3d at 234). In other words, "it is sufficient if a plaintiff avers that "had the alleged [d]efect been disclosed, consumers would not have purchased [defendant's product]." *McCalley*, 2008 WL 878402, at *9 (D.N.J. 2008).

Here, Plaintiff has made such allegation. Compl. ¶¶ 14, 69. Nearly identical allegations were considered sufficient in another lawsuit brought against a washing machine manufacturer. *See Morcom*, 2017 WL 8784836, at *15; *see also McCalley*, 2008 WL 878402, at *9 (allowing NJCFA claim to survive motion to dismiss because the plaintiff claimed that had the alleged defect been disclosed, consumers would not have purchased the product at issue). Therefore, Plaintiff has sufficiently alleged causation.

### 3.    *Unlawful practice*

While Plaintiff sufficiently alleges the first two elements, Plaintiff fails to state an unlawful practice prohibited by the NJCFA. *See supra* at 10 n.10. Because Plaintiff has failed to state an NJCFA claim, the Court will **DISMISS** *without prejudice* Count V, Plaintiff's NJCFA claim.

### D.    **Plaintiff Fails to State a TCCWNA Claim (Count VI)**

The Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J. Stat. Ann. § 56:12-14, *et seq.*, does not "recognize any new consumer rights but merely impose[s] an obligation on sellers to acknowledge clearly established consumer rights and provided remedies for posting or inserting provisions contrary to law." *Dzielak v. Whirlpool Corp.*, No. 12-89, 2019 WL 6607220, at *23 (D.N.J. Dec. 5, 2019) (quoting *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 68, (2017)). To state a claim under TCCWNA, a plaintiff must allege: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer a contract" or gives or displays any

18

written notice, or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller. *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014).

Plaintiff alleges that Samsung's "false advertising constitutes a consumer notice under the statute which is sufficient to state a claim." Opp'n at 35. Namely, Samsung's "practices contravene the [NJCFA] and [Samsung] [has] engaged in "misrepresentation, deception or unconscionable commercial conduct in connection with consumer sales as detailed in the Complaint." *Id.* (citing Compl. ¶¶ 134-43, 149).

Samsung correctly notes that Plaintiff's TCCWNA claim "rises and falls with her NJCFA claim." Because the Court dismissed Plaintiff's NJCFA claim, the Court too will **DISMISS *without prejudice*** Count VI, her TCCWNA claim. *See Ensey v. Gov't Emps. Ins. Co.*, 663 F. App'x 172, 177 (3d Cir. 2016) (affirming dismissal of TCCWNA claim when plaintiff failed to show defendant violated plaintiff's legal rights).

### E.    Plaintiff Fails to State a Breach of Warranty Claim (Count I)

To state a valid claim for breach of an express warranty under New Jersey law, a plaintiff must allege that: (1) the defendant made an affirmation, promise or description of the product; (2) this affirmation, promise, or description became part of the basis of the bargain for the product; and (3) the product ultimately did not conform to the affirmation, promise, or description. *Cox*, 2015 WL 5771400, at *5 (citing *Snyder v. Farnam Cos.,* 792 F. Supp. 2d 712, 721 (D.N.J. 2011)). A plaintiff must allege that the defendant failed to meet its warranty obligations *during* the warranty period. *Wesley*, 2024 WL 3272263, at *6 (emphasis in original).

Samsung argues that Count I, breach of express warranty, fails because the statute of limitations have run, the relevant warranty period has expired, and the warranties are not

unconscionable.  Mot. 7-13.  For the reasons explained below, the Court will **GRANT** Samsung's Motion as to Count I.

        *1.      Which express warranties cover the Flange Defect?*

As discussed *supra*, the Warranty that came with Plaintiff's washing machine included the following warranties:  a one year warranty from date of purchase for any parts and labor; a three year warranty for the stainless tub part (part only); and a ten year warranty for the "washing DD motor part" (part only).  Warranty at 67.[9]

Samsung contends that the only express warranties that would cover the Flange Defect were the one-year or three-year warranties.  Mot. at 9.  Plaintiff does not oppose, nor does she counter Samsung's argument that any claims Plaintiff could have brought under these warranties lapsed.  Plaintiff therefore has conceded that the Flange Defect cannot be brought under either of these warranties.  *Pers. v. Teamsters Loc. Union 863*, No. 12-2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver.").

Plaintiff argues instead that the Flange Defect is covered by the ten-year warranty because "the flange is connected to both the motor and the drum and is necessary for the drum to spin."  Opp'n. at 6.  But the Warranty clearly states that the ten-year warranty is for the motor part *only*.  Plaintiff does not allege any facts that support her contention that the flange was a motor part.  *See* Compl.  And as Samsung notes, "being connected to a motor part does not make the flange a motor part itself."  Reply at 2.  Therefore, the ten-year warranty does not cover the Flange Defect.

---

[9] Because the lifetime warranty does not exist, *see id.*, the Court will not consider any related arguments by Plaintiff.

2.    *The statute of limitations has run, as did Samsung's limited warranty*

Samsung argues that Counts I fails for two separate but related reasons:  (1) because the

statute of limitations have run for the relevant warranties, and (2), even had Plaintiff timely filed

under the statute, the applicable warranties themselves expired.  Mot. at 7-10.  The Court agrees

with Samsung.

In New Jersey:

(1) An action for breach of any contract for sale must be commenced **within four
     years after the cause of action has accrued**. . . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved
     party's lack of knowledge of the breach. **A breach of warranty occurs when
     tender of delivery is made, except that where a warranty explicitly extends to
     future performance of the goods and discovery of the breach must await the
     time of such performance the cause of action accrues when the breach is or
     should have been discovered.**

N.J.S.A. 12A:2-725(1)-(2) (emphasis added).

Samsung argues that Plaintiff's breach of warranty claim is barred either under the general

"four year" accrual rule or the "future performance" exception.  Mot. at 7-8.  Although courts

typically first consider whether the warranty at issue is a future performance warranty to determine

when the cause of action accrued, *see e.g., ACH Enterprises 1 LLC v. Viking Yacht Co.*, 817 F.

Supp. 2d 465, 470 (D.N.J. 2011), the Court finds this analysis unnecessary because the future

performance exception only applies if the defect is discovered during the warranty period.

As determined above, the only applicable warranties to the Flange Defect were the one-

year and three-year warranties.  Plaintiff purchased her washing machine on February 15, 2019

and discovered the Flange Defect in November 2023 (about four years and nine months later).

Compl. ¶¶ 19, 22.  Therefore, Plaintiff's defect arose outside the applicable warranty window, and

the future performance exception does not apply.  In turn, Plaintiff's claim must have been brought

within four years of her February 15, 2019 purchase.  Because she did not timely bring her claim,

her claims are barred under N.J.S.A. 12A:2-725(1)-(2).  Relatedly, Plaintiff brought her claims outside the applicable warranty windows, and they are untimely for that reason as well.

### 3.    *Unconscionability*

To avoid these time limits, Plaintiff alleges that the terms of the one-year Warranty were "commercially unconscionable" because Samsung knew that customers would likely not discover any issues related to the Flange Defect until after the one-year warranty period expired.  Compl. 102.  "Where the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if [s]he alleges that the warranty was unconscionable."  *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014).  In consumer goods transactions, "unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under N.J.S.A. 56:8-2."  *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 595 (D.N.J. 2016) (cleaned up).

Unconscionability may be either "substantive" or "procedural."  *Skeen,* 2014 WL 283628, at *13.  Procedural unconscionability may be shown by "a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process."  *Argabright*, 201 F. Supp. 3d at 595 (internal quotations omitted).  A contract term is "substantively unconscionable if the term is excessively disproportionate, involving an exchange of obligations so one-sided as to shock the court's conscience."  *Skeen*, 2014 WL 283628 at *13 (cleaned up).

Both parties cite caselaw from this district where courts have accepted or rejected arguments that warranties to Samsung's Warranty were unconscionable.  *Compare Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (Greenaway,

J.) (finding plaintiff sufficiently alleged a one-year warranty was unconscionable to survive a motion to dismiss) *with Majdipour*, 2013 WL 5574626, at \*20 (rejecting the plaintiff's claim that a warranty was procedurally unconscionable because they had "no meaningful choice" in determining the time limits and because a "gross disparity in bargaining power existed"). Therefore, the Court is not persuaded by Samsung's argument to follow courts in this district that have dismissed similar claims. Mot. at 11.

In the absence of binding precedent, the Court follows the cases in this District that have found warranty disclaimers unconscionable where class members have no meaningful choice in determining the terms of a warranty, there is a gross disparity of power between the class and the manufacturer, the terms of the warranty favor the manufacturer over the buyer, and the manufacturer had knowledge of a defect. *Durso v. Samsung Electonics Am., Inc.*, No. 12-5352, 2014 WL 4237590, at \*10 (D.N.J. Aug. 26, 2014); *see also McCoy*, 2023 WL 6140641, at \*4 (noting the Court will "more readily open the doors of discovery" when a plaintiff alleges that the defendant had knowledge of the defect and manipulation of the warranty terms to avoid the costs arising from the defect). In *Durso*, this Court found a nearly verbatim warranty in another suit brought by Plaintiff's attorneys over a different washing machine from Samsung. *See Durso*, 2014 WL 4237590, at \*7-11.

The Warranty is "a classic adhesion contract[], produced by the manifest and massive differences between [Samsung's] and [Plaintiff's] bargaining power, whose terms were uniform and uniformly of the 'take it or leave it' variety." *Morcom*, 2017 WL 8784836, at \*7. Furthermore, "[Samsung] is much larger than any individual consumer, and it is plausible that a consumer at [Lowe's] would be unable to renegotiate a written warranty with the manufacturer prior to purchasing a washing machine. *Id.* Thus, Plaintiff has established that Plaintiff (or class members)

had no meaningful choice in determining the terms of a warranty, there was a gross disparity of power between the class and the manufacturer, the terms of the warranty favored Samsung over the buyer.

However, Plaintiff has failed to show Samsung had knowledge over the Flange Defect. *See* Compl. ¶¶ 56-58, 102-03. As discussed *supra*, Section III.B.2, the online complaints Plaintiff includes in the Complaint do not sufficiently show that Samsung knew of the Flange Defect or that Samsung manipulated the relevant warranties to avoid the costs of the defect. Plaintiff's other allegations are conclusory and do not include facts that support her contention that Samsung was aware of the Flange Defect. *See, e.g.*, *McCoy*, 2023 WL 6140641, at *5. Therefore, Plaintiff has not pled unconscionability as she has failed to show Samsung had knowledge of the Flange Defect. Therefore, the Court will **DISMISS** *without prejudice* Count I, Plaintiff's express breach of warranty claim.

### F.    Plaintiff's Implied Breach of Warranty Claim Survives (Count II)

New Jersey law provides that merchantable goods must be fit for the ordinary purposes for which such goods are used. *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 612 (D.N.J. 2013) (citing N.J.S.A. 12A:2-314). Further, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." N.J.S.A. 12A:2-314.

Plaintiff alleges that Samsung breached the implied warranties of merchantability and fitness for a particular purpose. Compl. ¶¶ 106-116. The Court agrees.

24

### 1. *Implied warranty of merchantability*

"'Merchantability' requires that a product conform to its ordinary and intended use." *Morcom*, 2017 WL 8784836, at *7 (quoting *Montich v. Miele USA. Inc.*, 849 F. Supp. 2d 439, 458 (D.N.J. 2012)). "Because merchantability only requires that the thing sold [be] reasonably fit for the general purpose for which it is manufactured and sold, the Court finds it appropriate to consider the general purpose of the washing machines." *Montich*, 849 F. Supp. 2d at 458 (internal quotations omitted).

The intended use of the washing machines was to clean clothes. Plaintiff alleges that the Flange Defect made her washing machine "incapable of actually cleaning [her] clothes; rather the Washing Machines fill they clothes with metallic particles, mold and mildew and debris from the deteriorating flange clogs hoses preventing water from properly draining the machine." Compl. ¶ 111. The Court finds this allegation sufficient to survive a motion to dismiss. *See Montich*, 849 F. Supp. 2d at 458.

In some cases, the Flange Defect allegedly arises within one year of purchase. *Id.* ¶ 2. Therefore, the Court is not persuaded by Samsung's argument that Plaintiff's claim fails because the product fulfilled its ordinary and intended purpose well beyond the warranty period. Mot. at 15. Interpreting the Complaint in the light most favorable to Plaintiff, she has sufficiently alleged that the Flange Defect has caused Samsung's washing machines to fail within the warranty period.

### 2. *Implied warranty of fitness for a particular purpose*

"The implied warranty of fitness for a particular purpose may arise "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Morcom*, 2017 WL 8784836, at *8 (quoting N.J.S.A. § 12A:2-315). "A 'particular purpose' differs

from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Id.* (citing N.J.S.A. § 12A:2-315 cmt. 2).

> Plaintiff alleges:
>
> Samsung has breached the implied warranty of fitness for a particular purpose. The defectively designed Washing Machines were not fit for the particular purpose for which they were purchased by Class and Subclass Members to perform. The Class and Subclass Members purchased the Washing Machines for a particular purpose of actually cleaning their clothes; not to fill they clothes with metallic particles, mold and mildew and not to drain properly due to debris from the deteriorating flange clogging hoses of the washing machine. Samsung knew that the Class and Subclass Members were purchasing the Washing Machine for this purpose and marketed the Washing Machine for this particular purpose even advertising its "Swirl drum interior…helps extend clothing life by treating fabrics gently [and]…allowing fabric care with deep-clean results." Further, Samsung boasted its "self-clean" feature which "keeps your washer tub fresh and clean by using combination of soaking, pulsating and high speed spinning to remove dirt and bacteria."

Compl. ¶ 111.

Samsung argues that Plaintiff's claim should fail because Plaintiff does not allege she bought her machine for a *particular* purpose that is difference from its *ordinary* purpose.  Mot. at 16.  The Court disagrees.  As alleged in the Complaint, Plaintiff purchased her machine in reliance on Samsung's advertisements that the "self-clean" feature would "keep[] [her] washer tub fresh and clean by using combination of soaking, pulsating and high speed spinning to remove dirt and bacteria."  Compl. ¶ 20.  Furthermore, Plaintiff alleged she relied on "Samsung's advertising of the washing machine's ability to accommodate larger loads which would ultimately save Plaintiff time." *Id.*

In *Durso*, the Court rejected Samsung's argument that the plaintiff failed to allege that Samsung had reason to know of any "particular purpose" that plaintiffs had relied upon Samsung's

skill or judgment in making their purchase because "Samsung had reason to know that any purchaser of the [w]ashers might rely on the advertisements for the particular purpose" in the advertisements.  *Durso*, 2014 WL 4237590, at *11.  There, it was advertisements concerning the machine's ability to wash a king-size customer; here, it is Samsung's advertisements concerning the machine's ability to accommodate larger loads, the self-clean feature, and the swirl drum interior, which should have extended clothing life by treating fabrics gently.  Plaintiff's allegations that her washing machine failed to work for the particular purpose for which she bought the machine is sufficient to survive a motion to dismiss.  *See Kuzian*, 937 F. Supp. 2d at 613 (finding plaintiffs stated a claim for a breach of the implied warranty of a fitness for a particular purpose when they alleged the refrigerators they purchased did not produce ice properly, and they purchased those particular refrigerators for their purported ice making capabilities).  Therefore, the Court will **DENY** Samsung's Motion as to Count II, Plaintiff's implied breach of warranty claim, and allow the count to **PROCEED**.

### G.    Plaintiff Adequately States an Unjust Enrichment Claim (Count VII)

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust."  *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).  "Specifically, a plaintiff must 'show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'"  *Morcom v. LG Elecs. USA, Inc.*, No. 16-4833, 2017 WL 8784836, at *9 (D.N.J. Nov. 30, 2017) (quoting *id.*).

Samsung argues that Plaintiff's unjust enrichment claim should be dismissed for three reasons:  (1) it is duplicative of her fraud-based claims; (2) she did not buy her washing machine

directly from Samsung; and (3) a valid and enforceable warranty governs the parties' relationship. The Court disagrees with all three arguments.

*First*, "it is true, of course, that double *recovery* is prohibited; a claimant cannot collect damages for breach of express contract and recover the same damages on a quasi-contract theory such as *quantum meruit* or unjust enrichment." *Gap Properties, LLC v. Cairo*, No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020) (emphasis in original). "But what a claimant may *recover* is distinct from what a claimant may *plead*, and Federal Rule of Civil Procedure 8(d) permits alternative and inconsistent pleading of claims." *Id.* (citing Fed. R. Civ. P. 8(d)(2), (3)) (emphasis added). Therefore, the Court will not dismiss Plaintiff's unjust enrichment claim at the motion to dismiss stage on this basis. *Opheim v. Volkswagen Aktiengesellschaft*, No. 20-2483, 2021 WL 2621689, at *15 (D.N.J. June 25, 2021) ("[A]s a general matter, courts only dismiss *claims*, not *remedies*, at this early stage.") (emphasis added).

*Second*, the New Jersey Supreme Court has not yet decided whether a plaintiff can bring a suit against a manufacturer even when the plaintiff purchases the product from a third-party. In the absence of binding precedent, both parties cite caselaw that supports their view of this dispute. The Court is persuaded by Judge McNulty's thorough analysis in a similar case, where he concluded after reviewing New Jersey state court decisions that the "'direct relationship' inquiry appears essentially to be no more than a requirement that it be fair that the defendant be required to return a benefit derived from the plaintiff." *DeFrank*, 2020 WL 6269277, at *24; *see also Capital Health Sys. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855 at *11 (D.N.J. Feb. 27, 2018) ("New Jersey's 'direct relationship' requirement [i]s unnecessary where it can be determined that the defendant is not merely an innocent third party."). As the maker of Plaintiff's washing

machine, Samsung is not an innocent third-party, and therefore, Plaintiff's purchase of her machine from Lowe's is not a ground to dismiss her unjust enrichment claim.

*Third*, the "New Jersey Supreme Court has recognized an independent, common law cause of action of unjust enrichment." *CBD & Sons, Ltd. v. Setteducati*, No. 18-4276, 2019 WL 396982, at *14 (D.N.J. Jan. 31, 2019) (citing *Thieme v. Aucoin-Thieme*, 151 A.2d 545, 557 (N.J. 2016)). However, "'recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties.'" *Norcom Rsch., LLC v. Net2Phone Glob. Servs. LLC*, No. 22-1243, 2023 WL 1098188, at *4 (3d Cir. Jan. 30, 2023) (quoting *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). In *Norcom*, the Third Circuit recognized that were a contract found to be unconscionable by a district court, and the contract's validity was therefore challenged, an unjust enrichment claim could survive a motion to dismiss. *Id.*; *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. 23-1340, 2023 WL 8437279, at *3 (D.N.J. Dec. 5, 2023) ("While plaintiffs may be permitted to plead in the alternative under Rule 8(d)(2), this Court has previously dismissed unjust enrichment claims when there was a duplicative breach of contract claim and the governing agreement was not disputed."). Having found Samsung's arguments unpersuasive, the Court will **DENY** its Motion as to Plaintiff's unjust enrichment claim.

### H.    Injunctive Relief (Count III)

As discussed *supra*, Section III.G, in general, "courts only dismiss claims[,] not remedies at this early stage." *Opheim*, 2021 WL 2621689, at *15. The question of liability must be decided "before the viability of injunctive relief comes into play." *Id.*; *see also Williams v. Samsung Elecs. Am., Inc.*, No. 23-989, 2024 WL 1328133, at *6 (D.N.J. Mar. 28, 2024). Therefore, the Court finds Samsung's argument premature, and will **DENY** the Motion on this count.

## I.    Punitive Damages

Under New Jersey law, punitive damages are available "to punish a defendant's aggravated misconduct and to deter similar misconduct in the future." *Lightning Lube*, 4 F.3d at 1192. Samsung is correct that in general, punitive damages are unavailable in contract actions absent a special relationship between the parties or an aggravated set of circumstances. Mot. at 38-39 (citing *Gilliam v. Liberty Mut. Fire Ins. Co.*, No. 14-361, 2014 WL 10191547, at *3 (D.N.J. Sept. 26, 2014)); *see also Lightning Lube*, 4 F.3d at 1194 (collecting cases).

Nevertheless, courts in this District have also recognized that dismissal of punitive damages claims at the motion to dismiss stage would be premature given the possibility there may be a set of facts giving rise to punitive damages. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 512 (D.N.J. 1999); *see also Domm v. Jersey Printing Co.*, 871 F.Supp. 732, 739 (D.N.J. 1994) (denying a motion for punitive damages on *summary judgment* as premature). Therefore, the Court will **DENY** Samsung's Motion as to Plaintiff's claim for punitive damages.

## IV.    CONCLUSION

For the reasons above, the Court will **GRANT in part** and **DENY in part** Samsung's Motion. An appropriate Order accompanies this Opinion.


March 28, 2025

Date

Evelyn Padin, U.S.D.J.